IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**PATTY M. MAYNARD,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　Civil Action No. 2:17-cv-4131

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of Defendant's Decision (ECF No. 14) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Decision (ECF No. 15). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.

Background

Claimant, Patty M. Maynard, filed applications for DIB on March 31, 2014, and SSI on February 27, 2015.[1] Claimant alleged disability beginning February 9, 2010.[2] The claims were denied initially on August 22, 2014, and upon reconsideration on January 13, 2015. Claimant filed a request for a hearing on February 5, 2015. A video hearing was held on December 19, 2016. Claimant appeared in Logan, West Virginia, and the Administrative Law Judge presided over the

---

[1] These are the dates as reflected in the pleadings.
[2] Claimant amended her alleged disability onset date to March 31, 2014.

1

hearing from Charleston, West Virginia. The Administrative Law Judge (ALJ) denied Claimant's applications on February 14, 2017 (Tr. at 66-77). On April 13, 2017, Claimant sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Claimant's request for review on August 9, 2017 (Tr. at 1-4). Subsequently, On October 10, 2017, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 2).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall*

*v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920 (2017).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
>> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

3

>    (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:
>    > Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe

impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since March 31, 2014, the amended alleged onset date (Tr. at 68). Claimant meets the insured status requirements of the Social Security Act through December 31, 2019. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: cervical degenerative disc disease; bicuspid aortic valve; and mild aortic stenosis. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 72).  The ALJ then found that Claimant has a residual functional capacity to perform light work except she should not work with her arms overhead.  She can

occasionally climb stairs and ramps, but can never climb ladders, ropes or scaffolds. Claimant cannot kneel or crawl (Tr. at 73). The ALJ found that Claimant can perform past relevant work as an office manager (Tr. at 76). On this basis, Claimant's application was denied (Tr. at 77).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on June 13, 1960. She has a high school education. On the date of the hearing, Claimant lived with her parents (Tr. at 95).

Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

From April 2014 through October 2016, Claimant underwent primary care treatment at Comprehensive Health Centers, Inc. (Tr. at 367, 515-539, 805-806, 936-993). Claimant's primary care physician, C. D. Beckett, D.O., noted that she had a normal mood and affect during examinations on April 2, 2014, April 15, 2014, May 30, 2014, July 21, 2014, November 24, 2014, April 23, 2015, September 29, 2015 and December 29, 2015 (Tr. at 517, 521, 526, 531, 839, 854, 858, 870, 874).

On May 6, 2014, Claimant was sent to Charleston Area Medical Center after telling her social worker, Elizabeth Kent, MSW, that she was "not worth this earth" and wished she would die (Tr. at 584). Claimant underwent inpatient admission until being discharged on May 17, 2014 (Tr. at 426). Upon admission, Claimant stated that she had moved in with her parents to take care of her mother, who had dementia. Claimant stated that she regretted this decision and had grown quite irritable. (*Id.*) Claimant was pleasant and cooperative following the inpatient treatment and at the time of discharge (Tr. at 427). She smiled and noted that her mood was getting better all of the time, and she had a euthymic affect (Tr. at 428). She had a logical thought process and very good insight and judgment. (*Id.*)

Angel Glick, a psychologist with Psychological Associates of Logan, Inc., performed a consultative examination on July 30, 2014 (Tr. at 540-545). Claimant told Ms. Glick that she was able to complete some daily responsibilities which included household chores, preparing meals, grocery shopping, and managing the household finances for herself and her elderly mother and father (Tr. at 543). Claimant also stated that she attended church once per week. (*Id.*)

7

On examination, Ms. Glick noted that Claimant was friendly and cooperative, interacted appropriately, made good eye contact, could spontaneously generate conversation and had an overall normal social pattern. (*Id.*) Although Claimant had a depressed mood and restricted affect, she had a logical thought process, normal thought content, average judgment and denied suicidal ideation (Tr. at 544). Claimant had normal immediate and remote memory and moderately impaired recent memory. (*Id.*) Her concentration was moderately deficient but her persistence and pace were both normal. (*Id.*) She also had normal social functioning. (*Id.*) Ms. Glick diagnosed Claimant with major depressive disorder (Tr. at 545).

On August 21, 2014, Jeff Harlow, Ph.D., a state agency psychologist, reviewed the evidence of record to determine whether Claimant's mental impairments met or equaled one of the Commissioner's mental listings. (*Id.*) Dr. Harlow evaluated Claimant's mental impairments under the prior paragraph B criteria for listing 12.04[3] and found that she had mild restrictions of activities of daily living; no difficulty maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (*Id.*)

On January 7, 2015, Holly Cloonan, Ph.D., a second state agency physician, reviewed the evidence of record and found that Claimant had mild restrictions of activities of daily living; no difficulty maintaining social functioning; moderate difficulties in maintaining

---

[3] In 2017, the Commissioner revised the criteria in the Listing of Impairments that were used to evaluate claims involving mental disorders in adults and children. The prior paragraph B criteria of listings 12.04 and 12.06, at issue in the instant case, required the Commissioner to consider the functional areas of activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; and whether a claimant had repeated episodes of concentration, each of an extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, listings 12.04(b), 12.06(b) (2016). The revised paragraph B criteria of listings 12.04 and 12.06 now require the Commissioner to consider the functional areas of understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and the ability to adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, listings 12.04(b), 12.06(b) (2017). The revised paragraph B criteria went into effect for all new and pending applications on January 17, 2017. 81 Fed. Reg. 66,137, 66,137 (2016).

concentration, persistence, or pace; and no repeated episodes of decompensation (Tr. at 129).

On April 21, 2015, Claimant was evaluated by Elizabeth Kent, MSW, who observed Claimant's mood to be depressed and overwhelmed and diagnosed her with post-traumatic stress disorder and major depression – severe recurrence (Tr. at 730-731).

By February 25, 2016, Claimant reported to Dr. Tiffany Sparks that she had been doing pretty well for the past few months (Tr. at 821). She explained that she was living with her elderly parents and taking care of them, and that her mother was suffering from dementia. (*Id.*) Claimant stated that she continued to be friends with her ex-husband and that they talked often. (*Id.*) She indicated that she tried to find positive things to do to avoid negative things. (*Id.*) Claimant stated that she felt like she was getting back to the more "personable" person that she used to be but indicated she wished she had more freedom and felt obligated to take care of her parents. She explained that she felt she had more motivation than she had in the recent past. (*Id.*) Claimant stated that her mood was stable and she was tolerating her medications well. (*Id.*) Dr. Sparks noted that the Claimant smiled, maintained attention, had a logical thought process, denied suicidal or homicidal ideation and exhibited good judgment and insight (Tr. at 822).

On March 1, 2016, Dr. Beckett administered a depression screening. Dr. Beckett found Claimant to have symptoms of mild depression (Tr. at 880). Claimant reported multiple symptoms of depression that had been occurring over the past several days. *Id*.

On July 14, 2016, Claimant was seen by Timothy O. Dickey, M.D., West Virginia University Behavioral Medicine and Psychiatry (WVUPC). Claimant explained that she had stopped caring what people thought about her anymore (Tr. at 828). She stated that it was a "wonderful thing" that she did not care so much anymore because she felt that she had taken

9

control of her own life and stopped letting others control her. (*Id.*) She stated that sometimes she let others in her household "get to her" even though she is the one who takes care of both her elderly parents and the household. (*Id.*)

Dr. Dickey noted that Claimant was calm, cooperative, talkative and appropriate (Tr. at 829). She was pleasant and engaging and stated that she had more good days than bad. Claimant had a euthymic and engaging affect and fairly good judgment, impulse control, and concentration. (*Id.*)

On October 6, 2016, a treatment note from Veena Bhanot, M.D., stated that Claimant self-reported that she feels stressed, overwhelmed and depressed (Tr. at 832). Dr. Bhanot noted that "She feels her anxiety is uncontrolled, though she feels she is anxious about everything and nothing. When pressed further, she reports that her feelings are actually more of aggravation than anxiety (at her nephews and family)." (*Id.*) Dr. Bhanot's assessment states that Claimant is having worsening depression over the past 6 months in general (Tr. at 833).

Claimant returned to WVUPC on December 1, 2016, where she reported that "when it's sunny, I'm sunny and, when it's cloudy I'm a little down" (Tr. at 27). Dr. Bhanot noted that Claimant was calm, cooperative, talkative and appropriate (Tr. at 28). Dr. Bhanot indicated that Claimant had an engaging rapport, a fairly euthymic mood, a logical thought process, no suicidal or homicidal ideation, and fairly good insight, judgment, impulse control and concentration. (*Id.*)

On February 16, 2017, Claimant saw Dr. Dickey and stated that she had been doing okay but that her father had recently passed away (Tr. at 24). She said that things were going better at home and that she was taking time to use Facebook, play Yahtzee and just enjoy quiet time. (*Id.*) She stated that her mood was stable and that she was eating and sleeping fairly well. (*Id.*) Dr. Dickey noted that Claimant's behavior was calm, cooperative, talkative, appropriate and

interactive and that she had an engaging rapport, described her mood as "really doing okay" and a euthymic affect (Tr. at 25). Claimant had fairly good judgment, impulse control, memory and concentration. *(Id.)* Dr. Dickey noted that despite the recent passing of her father, Claimant was doing really well. *(Id.)*

On May 18, 2017, Claimant was seen by Ryan Cook, M.D. She stated that she was mostly happy, but did get irritated at her family (Tr. at 21). She noted that she was sleeping well and was maintaining her activity level for both enjoyment and working around the house. *(Id.)* Claimant indicated that she had a new boyfriend that she met on Facebook and things were going well. *(Id.)* She stated that she was tolerating her medications well and did not want to change them at the current time. *(Id.)* Dr. Cook stated that Claimant had relaxed, pleasant, and cooperative behavior; a euthymic mood; a reactive affect with a good range; a logical thought process; no suicidal ideation; good insight and impulse control; and intact memory and concentration (Tr. at 22).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's step two finding that Claimant's mental impairments were non-severe is not supported by substantial evidence (ECF No. 10). Defendant asserts that substantial evidence supports the ALJ's determination that Claimant's mental impairments were not severe within the meaning of the Social Security Act (ECF No. 14).

### Claimant's Testimony

Claimant testified that she had been an office manager. Her tasks included sitting, typing, filing, assisting clients with mobility and interacting with employers and employees (Tr. at 89-90, 99-100). She also performed payroll duties and if an employee was off from work, she would help do their job (Tr. at 99). Claimant testified that she had not been working for two or

three years due to pain and depression, but her ex-husband had let her stay home and he continued to pay her (Tr. at 99-100). Claimant stated she was let go from the job when her ex-husband had to downsize (Tr. at 100).

Claimant testified she had been receiving treatment for depression for years and that she was admitted to the hospital for 11 days for treatment in May 2014 (Tr. at 93). She stated that in May 2014 she "just went blank," "didn't have any feelings, everything was just dark," and "didn't care if I lived or died and didn't care about nothing." (*Id.*) Since that time, Claimant stated she had treated with a psychiatrist every two to three months and a psychologist. (*Id.*) She admitted that despite treatment with medication she had symptoms of depression, including weekly crying spells for no reason (Tr. at 94). Although her past work as an office manager involved interacting and talking with employees and the public, Claimant stated she would "rather not interact with people" now. (*Id.*) She stated that due to her depression, she no longer left her house as much as before (Tr. at 95).

Claimant testified she lived with her parents. (*Id.*) She stated she helped her parents with their medications, but her adult nephews and niece helped to take care of them otherwise (Tr. at 95-96).

### Vocational Expert's Testimony

At the hearing, a vocational expert (VE), described Claimant's past work as an office manager, classified by the DOT as a skilled, sedentary occupation, but actually performed by Claimant at the light to medium exertional level since she lifted more than 20 pounds and spent more than two hours a day on her feet (Tr. at 101).

On cross-examination, the VE testified that an office manager would have no more than occasional interaction with supervisors (Tr. at 102). The VE stated she was unsure how often an

individual would interact with coworkers or the public because it would depend on the size of the office (Tr. at 102-103). The VE confirmed that the primary duty of an office manager was to perform administrative tasks that kept the office running. (*Id.*) The VE stated that an office manager would provide instruction and lead the office team. She also stated that an individual unable to consistently provide instruction and lead their team would be unable to perform the job (Tr. at 104).

## Discussion

An impairment is considered severe, only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.916(c). Basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work settings; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922. The Commissioner's regulations explain the technique for evaluating whether a claimant's alleged mental impairment is severe. *See* 20 C.F.R. §§ 404.1520a, 416.920a.

Specifically, the ALJ is required to determine whether a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment; and, if so, to assess the claimant's limitations in four functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, and maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a, 416.920a. If the ALJ rates the claimant's limitations in the first three functional areas as "none" or "mild," and in the fourth as "none," he will generally conclude that the alleged impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

In the present matter, the ALJ determined that "[Claimant's] medically determinable [mental] impairments, considered singly and in combination, do not cause more than minimal

limitations in [Claimant's] ability to perform basic mental work activities and are therefore nonsevere" (Tr. at 70). The ALJ provided a detailed analysis of the four functional areas. Subsequently, the ALJ concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than mild limitation in any of the four functional areas, they are nonsevere" (Tr. at 72) (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

The ALJ relied upon substantial evidence in support of this determination. Regarding the first functional area, the ALJ reasonably determined that Claimant had no more than a mild limitation of her ability to understand, remember, or apply information (Tr. at 71). As noted by the ALJ, during a consultative examination by psychological examiner Angela Glick, M.A., despite having a depressed mood and restricted affect, Claimant had a logical and organized thought process, normal thought content, and average judgment (Tr. at 71, 544). While she did have moderately impaired recent memory, she had normal immediate and remote memory (Tr. at 544).

As also explained by the ALJ, "Mental status examinations performed by [Claimant's] treating mental health providers either do not mention the claimant's memory or note that the claimant's memory was good or 'fairly good'" (Tr. at 22, 25, 71). Similarly, examinations by her treating providers also support that she had a good ability to both understand and apply information.

Claimant has self-reported to being the caretaker of her elderly and ill parents and their household including preparing meals, performing household chores, grocery shopping, and managing the household finances (Tr. at 543, 821, 828). She also reported engaging in leisure activities such as using Facebook and playing Yahtzee (Tr. at 828). Claimant also needed no special reminders to take her medication (Tr. at 281). This evidence supports the ALJ's finding

that Claimant had a mild limitation in the area of understanding, remembering, and applying information.

The ALJ also reasonably found that Claimant had no more than a mild limitation in the functional area of interacting with others (Tr. at 71-72). The evidence of record shows that while Claimant did experience depression and anxiety, she nonetheless interacted well with others. Claimant reported attending church weekly (Tr. at 543). Treating and examining mental health providers described her as smiling, calm, relaxed, pleasant, cooperative, talkative, appropriate (Tr. at 28, 821). She often had a euthymic and engaging affect and an engaging rapport (Tr. at 21, 25, 28, 427, 829). Ms. Glick noted that Claimant was friendly and cooperative, interacted appropriately, made good eye contact, could spontaneously generate conversation, and had an overall normal social pattern (Tr. at 543-544). In fact, Claimant's treating social worker specifically described Claimant as "very socially skilled, learns quickly" (Tr. at 578). During the relevant period, Claimant reported talking often with her ex-husband (Tr. at 821) and using Facebook (Tr. at 24). As such, substantial evidence supports the ALJ's finding that Claimant had only a mild limitation in her ability to interact with others.

Substantial evidence supports the ALJ's finding in the third functional area that Claimant had only a mild limitation in her ability to concentrate, persist, or maintain pace (Tr. at 72). Following Claimant's consultative examination, Ms. Glick specifically observed that Claimant had a normal ability to maintain persistence and pace (Tr. at 544). While Ms. Glick opined that Claimant had a moderately deficient ability to maintain concentration due to making two mistakes when counting backward by threes, her treating providers often noted she displayed fairly good or good concentration (Tr. at 22, 25, 28, 829). In support of the treating providers' opinions, Claimant is able to drive, play Yahtzee, care for her elderly and

ill parents, and actively use Facebook to make social connections (Tr. at 21, 24, 282).

Regarding the fourth functional area, the ALJ determined that Claimant had no limitation of her ability to adapt or manage herself (Tr. at 72). Claimant was the primary care taker for her elderly and ill parents (Tr. at 426, 821, 828). She also reported taking care of her parents' household and performing the chores including preparing meals, grocery shopping, and managing the household finances (Tr. at 828, 543). She is able to drive a car, pay bills, count change, handle a savings account, and use a checkbook (Tr. at 282).

As an example of her ability to adapt, Claimant specifically told her treating psychiatrist at WVUPC that she "stopped caring what people thought about her anymore" (Tr. at 828). She stated that the "wonderful thing" was that she felt she had taken control of her own life and had stopped letting others control her. (*Id.*) In addition, Claimant was able to adapt after her father passed away and explained that "things were going better" because she was taking more time for herself (Tr. at 24). She also stated that she was able to maintain her activity level for both enjoyment and working around the house (Tr. at 21).

While Claimant was hospitalized in May 2014 after stating she wished she would die (Tr. at 426), she adapted well after an 11 day in-patient stay. By July 2014, Claimant was back to caring for her elderly parents, taking care of the household, and attending church (Tr. at 543). She was friendly, cooperative, and interacted appropriately. (*Id.*) Therefore, substantial evidence supports the ALJ's finding that Claimant had no limitation in the functional area of adapting or managing oneself.

The ALJ determined that the mental impairments of Claimant, who took care of her elderly parents and household, enjoyed leisure activities, made social connections of Facebook, and frequently had a fairly good or good ability to maintain concentration, are not severe within

16

the meaning of the Act. Claimant attempts to cite the opinions of reviewing state agency doctors, Dr. Harlow and Dr. Cloonan, to support her argument that substantial evidence did not support the ALJ's decision. However, the ALJ gave some weight to Dr. Harlow and Dr. Cloonan because they did not have the opportunity to review all of the evidence of record and their opinions were based upon the old paragraph B criteria. Dr. Harlow reviewed the evidence of record on August 21, 2014, and Dr. Cloonan reviewed the evidence of record on January 7, 2015. The record as of the date of the hearing included medical records until May 2017.

Moreover, "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Id.* (alterations in original) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.1996). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). (alteration in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted).

## Conclusion

For the reasons provided above, the undersigned respectfully recommends the District Judge find that substantial evidence supports the ALJ's assessment of Claimant's RFC and that

Claimant's mental impairments were non-severe, therefore, Plaintiff's Brief in Support of Motion for Judgment on the Pleadings should be denied (ECF No. 10).

Accordingly, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10), **GRANT** the Defendant's Brief in Support of the Defendant's Decision (ECF No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr.7  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  July 27, 2018

Dwane L. Tinsley
United States Magistrate Judge